In re CARDINAL
ENTERPRISES, Debtor(s).

**CARDINAL ENTERPRISES, Appellant,**

v.

**FAR WEST FEDERAL
BANK, Appellee.**

**BAP No. OR 86–1273 EAsMe.
Bankruptcy No. 384–01559.
Adv. No. 84–0536.**

United States Bankruptcy Appellate
Panels of the Ninth Circuit.

Submitted Sept. 26, 1986.

Decided Dec. 15, 1986.

J. Branford Shiley, Portland, Or., for appellant.

Frank Vizzini, Portland, Or., for appellee.

Before ELLIOTT, ASHLAND and MEYERS, Bankruptcy Judges.

ELLIOTT, Bankruptcy Judge:

Debtor, Cardinal Enterprises, appeals the decision of the bankruptcy court that denied its motion to set aside a foreclosure sale as a fraudulent transfer under § 548(a). Debtor also argues that defendant was estopped from holding the sale because debtor relied on previous postponements of the date of sale. Debtor also argues that defendant breached a fiduciary duty it owed to debtor when it held the sale. We affirm.

## FACTS

On December 31, 1973, Cardinal Enterprises ("Cardinal") sold the Metro Arms Apartments ("Metro") to United Empires Corporation ("United") by an all-inclusive deed of trust. Metro was encumbered by several mortgages at the time of the sale to United. Cardinal took back a deed of trust in the property as security for the purchase price.

In 1981, Cardinal used the deed of trust on Metro as collateral for a loan from Far West Savings & Loan Association ("Far West"). Far West took a deed of trust in Cardinal's vendor's interest in the sale of Metro.

In late 1981, United began falling behind on its payments to Cardinal. In turn, Cardinal was unable to make payments to Far West. In February, 1982, Cardinal filed suit against United to foreclose on Metro. Foreclosure was sharply contested by United, and led to prolonged litigation. At the same time, Cardinal's attorney met with a representative of Far West to discuss the delinquent payments. Far West expressed a willingness to wait for the monthly payments, as long as Cardinal was making progress in resolving its problems with United.

This situation continued until July, 1983, when an Oregon court granted summary judgment against Cardinal in its foreclosure action against Metro. Far West then commenced foreclosure proceedings against Cardinal by noticing the default and setting the sale of Cardinal's interest in the Metro deed of trust for February 15, 1984.

Beginning in February, 1984, and continuing for several weeks, Far West postponed the foreclosure sale on a weekly basis, in the hope that Cardinal and Western Heritage Savings & Loan ("Western Heritage") would reach a settlement. At some point in the proceedings, Western Heritage acquired United's interest in Metro. Although negotiations continued, the parties were unable to reach any agreement regarding the delinquent payments on Metro. On March 8, 1984, Far West informed both Cardinal and Western Heritage that the last postponement was granted until March 21, 1984, when Cardinal's interest in Metro would be sold.

In spite of this information, Cardinal still could not settle with Western Heritage. Cardinal also failed to pay Far West the arrearage on the loan. On March 21, 1984, Cardinal's interest in the Metro deed of trust was sold. Far West, the only bidder, purchased it for approximately $140,000, the amount of the outstanding balance on the Cardinal loan. Cardinal did not show up at the sale. Later that day, Cardinal's attorney called Far West to get another extension of the sale. Far West informed Cardinal that the sale had already taken place, and that Far West was the buyer. Cardinal asked Far West to set aside the sale, but Far West refused.

Several weeks after the sale, Western Heritage and Far West worked out a settlement to bring the Metro contract current.

On May 9, 1984, Cardinal filed bankruptcy under Chapter 11. Cardinal then brought an adversary proceeding to set aside the foreclosure sale under § 548(a) as a fraudulent transfer, and also on the grounds of estoppel and breach of fiduciary duty by Far West. The bankruptcy court denied the motion on all three counts. Cardinal appeals the decision on all counts.

## DISCUSSION

The dispositive issue here is whether the court is bound by the Ninth Circuit decision in *In re Madrid,* 725 F.2d 1197 (9th Cir. 1984), *cert. denied* 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984). Appellant argues that because Congress amended the Bankruptcy Code in response to the *Madrid* decision, we are not bound by that decision.

In *Madrid,* the Ninth Circuit held that a trust deed sale was not a "transfer" under § 548(d)(1), and therefore could not be set aside as a fraudulent transfer. Under *Madrid,* a transfer occurs when the interest is perfected, not when the foreclosure sale is held.

Immediately after this decision, Congress amended the Bankruptcy Code. The Bankruptcy Amendments and Federal Judgeship Act, known as BAFJA, amended § 101(48) to say that "transfer" includes "foreclosure of the debtor's equity of redemption." Section 548(a) was amended to say that fraudulent transfer provisions apply if the debtor voluntarily or involuntarily makes the transfer.

■ The 1984 BAFJA amendments were made effective for cases filed on or after October 8, 1984. Thus, pre-BAFJA law is applied to all cases filed before the effective date of the amendments. Cardinal filed bankruptcy on May 9, 1984, several months before the passage or effective date of the amendments. Therefore, pre-BAFJA law applies to *In re Cardinal.* In the Ninth Circuit, the law before the amendments became effective was the case law of *Madrid.* We are bound by the *Madrid* decision in the present case.

■ Under *Madrid,* the transfer occurs at the date of perfection, not at the date of foreclosure. Therefore, in the present situation, the transfer from Cardinal to Far West actually occurred when Far West perfected its security interest. This occurred on November 27, 1981. Under § 548(a), only a fraudulent transfer "made or incurred on or within one year before the date of the filing of the petition" can be avoided by the trustee. The transfer from Cardinal to Far West was made approximately two and a half years prior to the filing of the petition and cannot be set aside.

Appellant argues that because Congress amended the Code to reject the holding of *Madrid,* we are not bound by the decision in *Madrid,* and we should make an independent evaluation of when a transfer occurs. The cases cited by appellant in support of this argument do not suggest that we are free to make an independent evaluation of the transfer.

In *Hercules, Inc. v. Environmental Protection Agency,* 598 F.2d 91 (D.C.Cir.1978), the court held that courts should follow the current law, unless Congress has provided otherwise. Congress clearly provided for the effective date of the 1984 amendments. We are bound by that date.

■ Appellant also argues that the bankruptcy court erred in finding that Far West was not estopped from conducting the sale. The standard of review on this issue is whether this finding was clearly erroneous. The court concluded that there had been a misunderstanding between the parties, but that Far West never made any false representations regarding its right to foreclose. This finding is not clearly erroneous, and we should affirm the bankruptcy court on this issue. Bankruptcy Rule 8013. *In re American Mariner Industries,* 734 F.2d 426, 429 (9th Cir.1984).

■ Appellant also raises the issue of a breach of fiduciary duty by defendant. Cardinal argues that Far West owed a fiduciary duty to Cardinal, and that this duty required reasonable notice of the sale, and a reasonable opportunity to cure. Cardinal claims that Far West failed to perform this duty owed to it. The bankruptcy court held that there was no duty owed by Far West under Oregon law. Because this is a conclusion of law, we must review it de novo.

■ The leading Oregon case on this issue is *Harper v. Interstate Brewery Co.,* 168 Or. 26, 120 P.2d 757 (1942). In this

case, the defendant mortgagee sold the property, but discouraged potential buyers in order to purchase the property at a low price for itself. The court found that this manner of conducting the sale was a breach of the common law contract duty of good faith. Although the court used the term "fiduciary" when defining the duty owed, it appears the court was implying the duty of good faith owed between contracting parties, and not the special trust, confidence and loyalty owed by fiduciaries. This interpretation is confirmed by the holding of the case which describes the duty owed by a mortgagee in the exercise of a power of sale of real property as the duty "to act in good faith using all reasonable efforts to make the sale beneficial to the mortgagor." *Harper,* 120 P.2d at 763.

Subsequent Oregon cases have held that *Harper* is limited to its facts. The courts have not extended the duty set out in *Harper* to beneficiaries under trust deeds. In *Cascade Steel Fabricators, Inc. v. Citizens Bank of Oregon,* 46 Or. App. 573, 612 P.2d 332 (1980), the court held that the duty set out in *Harper* was "specifically directed to the manner in which the mortgagee exercised its power of sale." *Cascade,* 612 P.2d at 576.

Similarly, the court in *Wright v. Associates Financial Services,* 59 Or. App. 688, 651 P.2d 1368 (1982), *reh. denied* 294 Or. 391, 656 P.2d 945, *cert. denied* 464 U.S. 834, 78 L.Ed.2d 116 (1983), held that the duty created by *Harper* was the duty of the mortgagee to "act in good faith by using all reasonable efforts to make the sale beneficial to the mortgagor by obtaining the best price reasonably obtainable for the property." *Wright,* 59 Or. App. at 695, 651 P.2d at 1373. The court also held that when this duty exists, it only applies to the trustee and not the beneficiary of the deed of trust.

Under Oregon case law then, a trustee owes a duty to act in good faith and use all reasonable efforts to obtain the best price for the property. Appellant argues that we should extend this law to apply to the beneficiary of a deed of trust, and that we

should find that the duty includes the giving of reasonable notice of the sale and a reasonable opportunity to cure.

There is no indication in the cases cited above that the Oregon Supreme Court would extend the duty to beneficiaries of a deed of trust, nor that the court would extend the *Harper* duty to include the giving of reasonable notice. Absent such an indication, we cannot extend the law as appellant argues that we should. Therefore, Far West owed no duty to Cardinal and could not breach a duty.

AFFIRMED.