**In re WHEELER TECHNOLOGY, INC., aka Wheeler Aircraft, Debtor.**

**Hugh SMITH, Alexair, Inc., Appellants,**

v.

**WHEELER TECHNOLOGY, INC., Unsecured Creditors Committee, United States Trustee, Appellees.**

**BAP No. WW–91–1373 ROMe.**

**Bankruptcy No. 90–33683T.**

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted Sept. 20, 1991.

Decided Jan. 16, 1992.

Paul B. Snyder, Tacoma, Wash., for appellants.

J. Todd Tracy, Seattle, Wash., for appellees.

Before RUSSELL, OLLASON, and MEYERS, Bankruptcy Judges.

## MEMORANDUM

RUSSELL, Bankruptcy Judge:

A creditor appeals from an order of the bankruptcy court removing him from the Unsecured Creditors' Committee for failure to comply with a court order to return goods in his possession that the debtor was attempting to redeem under Washington law. The order requiring the turnover of the goods was the result of a motion rather than an adversary proceeding as is required by the Bankruptcy Rules. The court subsequently awarded the debtor attorney's fees and costs incurred in recovering the goods held by the creditor. We reverse and vacate the orders.

## I. FACTS

Creditor Hugh Smith and Alexair, Inc.[1] ("Hugh Smith/Alexair") appeals from the April 10, 1991 order of the bankruptcy court entitled "Order on Final Hearing Re Order to Show Cause to Hugh Smith and/or Alexair, Inc." Hugh Smith was a creditor of the debtor, Wheeler Technology, Inc., aka Wheeler Aircraft Company

---

**1.** Hugh Smith is the principal of Alexair, Inc.

("Wheeler"). Wheeler was in the business of constructing airplane kits sold for home built airplanes. Wheeler stored proprietary molds and plugs for these kits at a storage unit operated by Point Fosdick Landlockers.

When Wheeler fell behind in rent payments on the storage unit, Point Fosdick Landlockers sold the contents at a private sale on October 4, 1990 to the appellant, Mr. Hugh Smith/Alexair, Inc. The day after the sale, on October 5, 1990, Alexair and two other creditors filed an involuntary Chapter 7[2] petition against Wheeler. On October 29, 1990, Wheeler converted the involuntary Chapter 7 to a voluntary Chapter 11. On December 12, the U.S. Trustee appointed an Unsecured Creditors' Committee and the appellant, Hugh Smith was among those appointed[3].

In January 1991, Wheeler learned that Hugh Smith/Alexair had purchased the contents of the storage unit and obtained an order for Hugh Smith to be examined regarding the purchase under Bankruptcy Rule 2004. Prior to the examination, counsel for Wheeler advised counsel for Hugh Smith/Alexair that Wheeler was exercising its redemption rights under Washington state law, Wash.Rev.Code § 19.150.110, and that he was holding a check for the amount necessary to redeem the property from Hugh Smith/Alexair.

On February 12, 1991, after being served with the Rule 2004 order and having been notified that Wheeler was exercising its redemption rights, Hugh Smith/Alexair, Inc. transferred the goods to a purchaser in Canada. On February 14, 1991 at the Rule 2004 examination, Wheeler attempted to tender the cashiers check to redeem the goods. The tender was rejected because (1) the check was made payable to Hugh Smith, not Alexair, Inc., the name on the bill of sale and (2) because the check did not include costs allowable under the state statute. Wash.Rev.Code § 19.150.110.

Counsel for Wheeler contacted the Canadian purchaser, advising him that Wheeler was exercising its redemption rights. The Canadian purchaser responded that he would return the goods upon payments of the costs incurred in shipping the goods to Canada.

As expiration of the six month redemption period approached, Wheeler still did not have information on the costs incurred by Hugh Smith/Alexair. Wheeler filed an *ex parte* Motion for Order to Show Cause to hold Hugh Smith/Alexair in contempt for failure to provide an accounting of the costs incurred in the purchase of the goods from the storage unit. The hearing was set for March 12, 1991 and Hugh Smith was personally served. The Canadian purchaser was served via facsimile and overnight mail.

The Canadian purchaser did not appear at the hearing and Hugh Smith requested a continuance that was denied. The court orally ruled that the goods must be returned to the United States and delivered to Wheeler, Inc. by March 20, 1991. The court further ordered Hugh Smith/Alexair, Inc. to be removed from the Unsecured Creditors' Committee pending the return of the goods.

A hearing was scheduled to determine what additional costs, if any, Wheeler should pay and to consider monetary sanctions. At the final hearing, the court permanently removed Hugh Smith/Alexair from the Unsecured Creditors' Committee for (1) knowingly violating the automatic stay by removing property of the estate out of the United States and (2) for failure to comply with the court's March 19, 1991 order directing the return of the goods by March 20, 1991. In an order entered April 10, 1991 the court imposed monetary sanctions of $2,059.76 in attorney's fees and costs to be paid to Wheeler by Hugh Smith/Alexair pursuant to § 362(h).

2. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9035.

3. Hugh Smith was elected vice chairman of the unsecured creditors' committee.

## II. ISSUES

1.) Whether the court abused its discretion in removing the appellant from the Unsecured Creditors' Committee as a sanction for violating the automatic stay and for failing to comply with the order directing return of the subject property by March 20, 1991.

2.) Whether a turnover of property can be ordered by the bankruptcy court without the benefit of an adversary proceeding.

## III. STANDARD OF REVIEW

■ We review the imposition of sanctions for an abuse of discretion. *See Callow v. Amerace Corp.*, 681 F.2d 1242, 1243 (9th Cir.1982). The interpretation and application of the Bankruptcy Rules is purely a question of law and is reviewed *de novo*. *In re Holm*, 931 F.2d 620 (9th Cir.1991); *In re Cardinal Enterprises*, 68 B.R. 460, 462 (9th Cir. BAP 1986), *aff'd without opinion, Cardinal Enterprises v. Far West Federal Bank*, 844 F.2d 791 (9th Cir.1988).

## IV. DISCUSSION

### A. *Removal From The Creditors' Committee*

■ The bankruptcy court, in its oral findings of fact and conclusions of law [4], found the actions of the appellant especially egregious because of his position on the Unsecured Creditors' Committee and the fact that he had above average knowledge of not only the automatic stay, but also that the debtor attempted to exercise its redemption rights. Those facts were largely undisputed [5]. (See ER 11)

---

[4]. The court made lengthy oral findings of fact and conclusions of law at the hearings on March 12, March 19, and April 10, 1991. (ER Exhibits 9, 10, 11.)

[5]. The appellant does not dispute the finding that he was in violation of the automatic stay, but in his reply brief he does dispute the amount of attorney's fees awarded. He argues that the court's award was not reasonable and there was no evidence in support of the amount awarded. A review of the transcripts shows that the court awarded an amount considerably less than that requested by the debtor. The debtor requested $3,800 in attorney's fees based upon the affidavit of Mr. Cullen. The court awarded a sanction

The issue of whether a court is empowered to remove a creditor from the Creditors' Committee presented some difficulty, as the court recognized:

> Despite the absence of section 1102(c) [6] from the Code as of 1986, it defies the Court's imagination that this Court would not be in a position to enforce its orders through all appropriate means, particularly when one is dealing with a member of the official Creditors' Committee who acts for all of the creditors within the unsecured class, to require that person to put aside specific concerns and conditions and a specific desire to benefit certain parties potentially by taking these kinds of actions in the circumstances where that person owes a duty to the committee in general and to the creditors of that class in general.
>
> And thus if Mr. Smith was not willing to comply with the Court order, I could see no recourse and still see no recourse than to determine under section 105 that he should not be a member of a constituent representative group in the case. To do so, to permit him to remain in that position if he desired to ignore the Court order, in my view would be rewarding activities that are far from those that the Court would expect of a member of the Creditors' Committee now.

*See,* ER 10:16–17.

We agree with the Hugh Smith/Alexair's assertion that the court had acted beyond its powers in removing him from the Creditors' Committee as a sanction. As the court noted in the 1986 revision of the Code, Congress deleted § 1102(c) which had

---

of $2,059.76 for attorney's fees and costs: the actual cost of storage, transportation and loading of the goods and $500 in attorney's fees. ER 12:3–4.

[6]. Prior to its deletion in the 1986 amendments, § 1102(c) provided:

On request of a party in interest and after notice and a hearing, the court may change the membership or the size of a committee appointed under subsection (a) of this section if the membership of such committee is not representative of the different kinds of claims or interests to be represented.

11 U.S.C. § 1102(c) (1988).

given the bankruptcy court the power, after notice and a hearing, to change the membership or size of the Creditors' Committee that it had appointed.

■ Since the 1986 revision of § 1102, bankruptcy courts have held that courts no longer have this power because of the 1986 nationwide expansion of the Office of the U.S. Trustee. The power to appoint and delete members of the Creditors' Committee now resides exclusively with the U.S. Trustee. *Matter of Gates Engineering Co., Inc.*, 104 B.R. 653, 654 (Bankr.D.Del. 1989) ("Subsequent to 1986, subsection (c) was deleted in § 1102 so that the court no longer had any authority over the composition of committees appointed by the U.S. Trustee."); *In re Drexel Burnham Lambert Group, Inc.*, 118 B.R. 209, 210 (Bankr. S.D.N.Y.1990) ("Noteworthy is the absence of any indication in the statute that the court may add to or delete an unsecured creditor from a committee.").

At least one bankruptcy court has rejected an attempt to use § 105[7] to achieve a result contrary to the legislative history and Congressional intent in deleting subsection (c) of § 1102. *Matter of Gates Engineering*, 104 B.R. 653, 654 (Bankr. D.Del.1989) ("However, the court cannot under the provisions of § 105 circumvent the unambiguous language of the three sections of the Code previously stated in light of the deletion of subsection (c) in 1986.")

We agree with the interpretation set forth in the above cases and therefore must reverse the April 10, 1991 order of the court removing the appellant, Hugh Smith/Alexair from the Unsecured Creditors' Committee.

B. *Turnover of Property*

■ Wheeler's action to recover property was inappropriately brought by means of an *ex parte* motion where an adversary proceeding is required. Bankruptcy Rule 7001 explicitly states that an action to recover money or property is an adversary proceeding, subject to the procedural rules therein.

On March 4, 1991, Wheeler filed an *ex parte* Motion and Order to Show Cause why Hugh Smith/Alexair should not be held in contempt for not providing Wheeler with a breakdown of the costs payable in order to exercise rights of redemption under state law. The motion was served on Hugh Smith/Alexair March 5, 1991. The hearing was set for March 12, 1991. On March 19, 1991 an order was entered requiring Hugh Smith/Alexair to turn over the contents of the Point Fosdick Landlocker on or before 5:00 p.m., March 20, 1991. The Appellant Hugh Smith/Alexair was ordered to turn over this property even though the *ex parte* motion contained no such request. (ER 1, 2, 3, 7) In the court order of April 10, 1991, Wheeler was awarded $2,059.76 in attorneys fees and costs to recover the property, which was the same amount required to redeem[8]. (ER 8)

■ The March 19, and April 10, 1991 orders are void because they violate the procedural requirements incorporated in the Bankruptcy Rules. Basic notions of due process require that parties be apprised of any action against them and that they be allowed a reasonable opportunity to respond. The Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.* recognized this:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present

---

**7.** Section 105 provides in part:
 (a) the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any de-

termination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse or process.
11 U.S.C. § 105(a) (1988).

**8.** Both the March 19, 1991 and April 10, 1991 orders are appealed herein.

their objections. The notice must be of such nature as reasonably to convey the required information ... and it must afford a reasonable time for those interested to make their appearance.

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (citations omitted).

The concept of due process is no less applicable in bankruptcy proceedings. It is incorporated into the bankruptcy code by the procedural requirements of Part VII of the Federal Rules of Bankruptcy Procedure. Rule 7001 requires an action to recover property to be brought as an adversary proceeding. The bankruptcy rules governing adversary proceedings were intended to provide essentially the same procedural and due process protections as the Federal Rules of Civil Procedure [9]. The bankruptcy rules specifically designate the recovery of property as an action receiving those procedural protections:

Rule 7001. Scope of Rules of Part VII.

An adversary proceeding is governed by the rules of this Part VII. It is a proceeding (1) to recover money or property....

Federal Rules of Bankruptcy Procedure 7001.

■ The relief requested by Wheeler was only a breakdown of costs associated with the purchase of the contents of the storage locker in order to tender the appropriate amount. The relief granted, however, far exceeded the relief requested. The resulting order mandated a turnover of property. (Order of March 19, 1991, ER 12) While *ex parte* motion procedure may or may not have been appropriate for the requested relief, it clearly does not provide the due process protection required for the ordered turnover of property. The required procedure is an adversary proceeding pursuant to Bankruptcy Rule 7001. "A turnover action is an adversary proceeding

which must be commenced by a properly filed and served complaint." *In re Perkins,* 902 F.2d 1254, 1258 (7th Cir.1990); *Accord, In re Interpictures, Inc.,* 86 B.R. 24, 29 (Bankr.E.D.N.Y.1988); *In re Gold Leaf Corp.,* 73 B.R. 146, 147 (Bankr.N.D.Fla. 1987); *In re Ace Industries, Inc.,* 65 B.R. 199, 200 (Bankr.W.D.Mich.1986); *In re Riding,* 44 B.R. 846, 858 (Bankr.D.Utah 1984).

The bankruptcy court in *In re Riding* stated:

The modern bankruptcy rules provide a mechanism for resolving turnover disputes in a manner that affords the parties a fair opportunity to present their sides of the issue, while promoting efficiency and uniformity in practice. To permit turnover by motion in this case would justify permitting it in other cases as well. The Bankruptcy Rules mandate that the court await the commencement of an adversary proceeding before determining whether turnover shall be required. Thus, before the bankruptcy court may order turnover of property ... a complaint must be filed, process served, an answer or motion interposed, discovery conducted, a hearing held, and findings of fact and conclusions of law made.

*In re Riding,* 44 B.R. 846, 859 (Bankr. D.Utah 1984).

■ The *ex parte* motion did not adequately apprise Hugh Smith/Alexair of what it was to defend against. Even if a motion were appropriate, the relief granted was not requested in the motion [10]. The motion contains no mention of a turnover of property. Appellee Hugh Smith/Alexair could not realistically be expected to prepare a defense to that which was not contained in the motion.

---

**9.** "These Part VII rules are based on the premise that to the extent possible practice before the bankruptcy courts and the district courts should be the same. These rules either incorporate or are adaptations of most of the Federal Rules of Civil Procedure." Advisory Committee Note, Bankr.Rule 7001, 11 U.S.C.A. (West 1989).

**10.** Even Rule 9014, which governs contested matters that are appropriately resolved by motion, provides that "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Federal Rules of Bankruptcy Procedure 9014.

Further, the expedited hearing did not afford Hugh Smith/Alexair sufficient time to respond in a meaningful manner. Having been served on March 5, 1991 for a hearing on March 12, 1991, Hugh Smith/Alexair had seven days to prepare. With responsive pleadings required to be filed and served at least two business days prior to the hearing, Hugh Smith/Alexair's counsel had even less time to respond to relatively complex issues including the potential removal from the Creditors' Committee as well as the other issues [11]. This truncated time frame does not comport with the requirements of procedural due process.

Appellate courts have voided bankruptcy court orders violative of due process. *See In re Center Wholesale, Inc.*, 759 F.2d 1440 (9th Cir.1985) (A cash collateral order was deemed void on due process grounds where an interested creditor had insufficient notice to adequately prepare for the hearing.); *In re Perkins*, 902 F.2d 1254, 1257 (7th Cir.1990) (Orders of a bankruptcy and district court were vacated where a turnover action brought by motion should have been brought as an adversary proceeding.); *In re Blumer*, 66 B.R. 109 (9th Cir.BAP 1986), *aff'd without opinion* 826 F.2d 1069 (9th Cir.1987) (The Panel set aside an *ex parte* order approving an extension of credit as void in violation of procedural due process.)

## V. CONCLUSION

The bankruptcy court abused its discretion in removing Hugh Smith/Alexair, from the Unsecured Creditors' Committee as a sanction for violation of the automatic stay and for failure to comply with a court order. Since the 1986 revision of the Code deleting § 1102(c), the bankruptcy court no longer has the power to delete a member from that committee and § 105 cannot be used to circumvent clear Congressional intent to place that power in the Office of the U.S. Trustee. Further, the turnover of property cannot be ordered on the basis of a motion without the initiation of an adversary proceeding as expressly required by the Bankruptcy Rules. We REVERSE and VACATE the March 19, and April 10, 1991 orders.

---

11. Hugh Smith/Alexair filed a Motion for Continuance on March 8, 1991. That motion was denied.