**In re NEW LIFE FELLOWSHIP, INC., Debtor.**

**Bankruptcy No. 95–14678–BH.**

United States Bankruptcy Court, W.D. Oklahoma.

Nov. 21, 1996.

Gretchen G. Harris, Oklahoma City, OK, for the Oklahoma Department of Securities.

Jackie L. Hill, Jr., Oklahoma City, OK, for the Indenture Trustee, American Church Trust Company.

John R. Hughey, Oklahoma City, OK, for the Unsecured Creditors' Committee.

Michael P. Kirschner, Lee & Kirschner, P.L.L.C., Oklahoma City, OK, for the case trustee.

Edward Nazar, Redmond & Nazar, L.L.P., Wichita, KS, for the Official Bondholders' Committee.

---

Mark B. Toffoli, Oklahoma City, OK, for the United States Trustee.

## MEMORANDUM OF DECISION AND ORDER DENYING MOTIONS TO VACATE APPOINTMENT OF THE OFFICIAL BONDHOLDERS' COMMITTEE

RICHARD L. BOHANON, Bankruptcy Judge.

The United States trustee has appointed an official bondholders' committee. The unsecured creditors' committee, the case trustee and the bondholders' indenture trustee all now seek an order vacating the appointment and abolishing the bondholders' committee.

The debtor sold several issues of secured[1] bonds. The face amount of the bonds total more than $8,000,000 and they are held by more than 900 persons. The trust instruments provide for an indenture trustee.

When the debtor defaulted the indenture trustee commenced this case by an involuntary petition which was filed in August 1995. Shortly after entry of the order for relief the case trustee and an official unsecured creditors' committee were appointed. The indenture trustee and its counsel have represented the interests of the bondholders since inception of the case.

In September 1996, more than a year after entry of the order for relief, the United States trustee appointed the bondholders' committee.

The movants offer numerous reasons why the committee should be abolished. They argue that the bondholders are already adequately represented by the indenture trustee; that the great majority of the bondholders favor abolition of the committee; that another committee with its own professionals would be an unnecessary expense and delay; that the trust indentures prohibit independent action by a small group of bondholders; that the committee and the indenture trustee would both represent the same parties, possibly causing duplicative efforts and confusion; that the bondholders are secured creditors; that the appointment is untimely; and that another committee is simply unnecessary.

The only evidence offered by the bondholders' committee in opposition to the motions is that some of its members believe the case trustee has not been sufficiently "aggressive" in his administration of the case; that some feel he should employ a broker to dispose of the estate assets; and that they have not been adequately informed of the progress of the case.

Although movants' arguments are reasonable, the fact remains that the committee has been appointed. Thus, the first inquiry the court must make is to determine whether it has the power to abolish the committee once the United States trustee has appointed it. This leads into an analysis of the appointment powers granted by section 1102(a)(1).

■ The unsecured creditors' committee relies on 2 *Collier on Bankruptcy*, ¶ 1102, at 1102–26 (15th ed. 1992). This section, however, discusses only reconstitution of committees under section 1102(a)(2), not appointment of committees under section 1102(a)(1). It is essential to keep in mind that section 1102(a)(1) deals with the United States trustee's appointment of committees while section 1102(a)(2) deals with the court's authority to order appointment of *additional* committees. Neither section provides for the *abolition* of a committee by the court.

The motion also relies on *In re Texaco Inc.*, 79 B.R. 560 (Bankr.S.D.N.Y.1987). However, the facts of *Texaco* are distinguishable for it deals with the merger of two creditors' committees and whether they adequately represent the interests of creditors under section 1102(a)(2). It does not address the appointment of a committee under sec-

---

**1.** The bondholders' indenture trustee claims the bonds are secured. From statements of counsel, however, it appears that the extent, validity or priority of the liens may be an issue for determination at a later date.

tion 1102(a)(1). The creditors' committee also cites *In re First RepublicBank Corp.*, 95 B.R. 58 (Bankr.N.D.Tex.1988), which concerns primarily issues about the adequacy of creditor representation under section 1102(a)(2), not appointment of the committee under section 1102(a)(1).

The case trustee asserts that *In re Dow Corning Corp.*, 194 B.R. 121 (Bankr. E.D.Mich.1996) provides the criteria to be followed. *Dow*, however, also addresses whether the court should order the appointment of an additional committee based on an argument that the existing committee did not adequately represent the particular creditors.

The indenture trustee and the unsecured creditors' committee contend they already adequately represent the bondholders. The fact is, however, that the indenture trustee is not a "committee" and the unsecured creditors' committee does not represent the interests of the bondholders because they claim to be secured.

The indenture trustee maintains that contractually it is the sole and exclusive representative for all the bondholders under the trust indentures and, therefore, they may not act independently. However, there is no authority offered to show that these contracts could somehow supplant Congress' power to establish uniform laws on the subject of bankruptcies as provided by Article I, Section 8 of the United States Constitution.

In support of the position that the court has authority to grant the requested relief, the indenture trustee and the case trustee rely upon *In re Sharon Steel Corp.*, 100 B.R. 767 (Bankr.W.D.Pa.1989). *Sharon* must be distinguished from the present case for there the issue was whether the United States trustee's act of appointing an additional committee of debenture holders was necessary to achieve adequate representation. In the present case, the issue is whether the court has the authority to abolish a committee of creditors not otherwise represented by an official committee. *Sharon* holds that section 1102(a)(2) does not give the United States trustee the power to negate, vacate or modify orders of the bankruptcy court; and that his actions under that section are subject to review *de novo*. Insofar as *Sharon* might be read to authorize judicial review of the United States trustee's appointment of committees under section 1102(a)(1) it is unconvincing. *See* Kenneth N. Klee, K. John Shaffer, *Creditors' Committees Under Chapter 11 of the Bankruptcy Code*, 44 S.C.L.Rev. 995, 1026 (1993).

The indenture trustee also maintains that the bondholders' committee should be abolished because the United States trustee acted arbitrarily and capriciously. The court, however, obviously does not even reach that issue if it is without the statutory power to grant the requested relief.

█ In this case both the specific language and the legislative history of section 1102(a)(1) compel the conclusion that the court it is without power to abolish the committee. First, section 1102(a)(1) plainly and without any ambiguity grants the United States trustee the exclusive authority to appoint committees. The statute says in absolute terms that "the United States trustee shall appoint a committee of creditors holding unsecured claims *and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.*" (Emphasis supplied) "[W]hen a provision has a plain meaning judges are to apply it and not otherwise explicate the Code." *In re Horwitz*, 167 B.R. 237, 239 (Bankr.W.D.Okla.1994). Furthermore, "statutes are to be applied in keeping with their ordinary language, unless to do that would lead to some result which is clearly at odds with an expressed congressional purpose." *Id.*

The legislative history of section 1102(a)(1), to the extent it may be relevant [2], also dispels

---

**2.** Some would say that examination of the legislative history is inappropriate for the statute is

unambiguous and absolute. *See, e.g., Bank One Chicago, N.A. v. Midwest Bank & Trust Company,*

any doubt that the United States trustee's authority is exclusive. The provision was amended in 1986 specifically to relieve the bankruptcy judges of the responsibility of appointing committees. *See* H.R.Rep. No. 99–764, 99th Cong., 2d Sess. 28 (1986) U.S.Code Cong. & Admin. News 1986, pp. 5227, 5241. *See also Masters, Mates & Pilots Plans, Inc. v. Lykes Bros. Steamship Co., Inc.*, 200 B.R. 933 (M.D.Fla.1996) which states "[t]here is no express language in the 1986 Amendments or in the legislative history of the 1986 Amendments which indicates that the Bankruptcy Court is prohibited from reviewing and altering Committee membership after the initial appointment by the Trustee." *See also Smith v. Wheeler Technology, Inc.*, 139 B.R. 235, 239 (9th Cir. BAP 1992) which holds that "[t]he power to appoint and delete members of the Creditors' Committee now resides exclusively with the U.S. Trustee."

With Congress placing the exclusive authority to appoint committees in the hands of the United States trustee, the question posed by the motions actually is whether 11 U.S.C. § 105(a) grants the courts power to substitute their judgment for that of the United States trustee.

The language of section 105(a) provides, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Use of the word "provisions" as opposed to the word "purposes," "suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective." *See* 2 *Collier on Bankruptcy*, ¶ 105.01 at 105–4 (15th ed. 1996). The treatise goes on to say:

> Regardless of the view adopted, it should be universally recognized that the power granted to the bankruptcy courts under section 105 is not limitless and should not be employed as a panacea for all ills con-

fronted in the bankruptcy case. Section 105.does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code or mandates of other state and federal statutes.

*Collier, supra* at 105–5. *See also In re Hoffman Bros. Packing Co., Inc.*, 173 B.R. 177 (9th Cir. BAP 1994) ("Section 105 must in all cases be carefully construed so as to implement and fit the specific provisions of the Bankruptcy Code"); *In re Barney's Inc.*, 197 B.R. 431, 438 (Bankr.S.D.N.Y.1996) (section "105(a) cannot create substantive rights not otherwise found in the Bankruptcy Code"); *In re First RepublicBank Corp.*, 95 B.R. 58, 60 (Bankr.N.D.Tex.1988) ("court may not invoke § 105(a) to create substantive rights that are not .provided by the Code"); *In re Gates Engineering Co.*, 104 B.R. 653 (Bankr. D.Del.1989) ("However, the court cannot under the provisions of § 105 circumvent the unambiguous language of [section 1102] in light of the deletion of subsection (c) in 1986.")

The "provision" at issue here is section 1102(a)(1) which is absolute in its language and deprives the court of any discretion concerning appointment or abolition of committees, leaving no room for application of section 105(a) to override the act of the United States trustee. If this result is bad policy, as the movants vigorously argue, it is Congress' exclusive role to alter the statute. *See Horwitz* at 242.

Accordingly, since the court lacks the power to grant the relief requested by the motions they are, therefore, denied.

—— U.S. ——, ——, 116 S.Ct. 637, 645, 133 L.Ed.2d 635 (1996) (Scalia, J., concurring); *Union Bank v. Wolas*, 502 U.S. 151, 163, 112 S.Ct. 527, 534, 116 L.Ed.2d 514 (1991) (Scalia, J.,

concurring); and *United States v. R.L.C.*, 503 U.S. 291, 309, 112 S.Ct. 1329, 1340, 117 L.Ed.2d 559 (1992) (Scalia, J., concurring).