### In re MERCURY FINANCE CO., Debtor.

### Ira Bodenstein, United States Trustee, Appellant,

v.

### Robert Lentz, Arthur Kaplan, Alan Aron, and George Pontikes, Appellees.

No. 98 C 6358.
Bankruptcy No. 98 B 20763.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 21, 1999.

initio, and the IRS is charged with knowledge of the fact because it is charged with knowledge of its own regulations.

Sandra Rasnak, United States Trustee, Chicago, IL.

Lewis S. Rosenbloom, McDermott, Will, & Emery, Chicago, IL, for appellee.

## MEMORANDUM AND ORDER

MANNING, District Judge.

This case turns on whether the bankruptcy court had jurisdiction to review the United States Trustee's decision to form a combined committee under 11 U.S.C. § 1102 consisting of both creditors and equity security holders and, if so, whether the bankruptcy court's orders regarding that committee which, among other things, dissolved it, were proper. For the following reasons, the decision of the bankruptcy court is affirmed.

### I. Background

Debtor Mercury Finance Company is a publicly traded holding company that is engaged, through its non-debtor operating subsidiaries, in the business of subprime automobile financing. Its primary assets consist of 37 operating subsidiaries which acquire installment sales finance contracts from automobile dealers and retail vendors, extend short term installment loans to consumers, and sell credit insurance and other related products. In 1997, Mercury Finance announced that its Chief Financial Officer had overstated its earnings for 1995 and 1996. Mercury Finance's shareholder value plunged more than $2 billion, and it was sued in state and federal court in Illinois and Delaware. Class action and derivative lawsuits seeking to recover losses arising from the purchase or sale of securities were consolidated in this district. In April of 1998, Magistrate Judge Edward Bobrick, who was conducting settlement conferences in the consolidated cases, designated an eight member settlement committee to represent all of the claimants in these cases for the purposes of settlement (the "Settlement Committee").

In July of 1998, some of Mercury Finance's creditors filed an involuntary Chapter 11 petition against it. Days later, Mercury Finance filed its own Chapter 11 voluntary petition. The bankruptcy court subsequently consolidated these cases. Appellant Ira Bodenstein, the United States Trustee for the Northern District of Illinois, then appointed two committees. First, he appointed a committee comprised of unsecured creditors pursuant to 11 U.S.C. § 1102(a)(1). The formation and composition of this committee is not at issue in this appeal.

Second, pursuant to 11 U.S.C. § 1102(a)(1), which allows United States Trustees to "appoint a committee of creditors holding unsecured claims" and such "additional committees of creditors or of equity security holders as the United States trustee deems appropriate," he appointed a committee in light of the acknowledged pre-petition fraud and questions as to Mercury Finance's value. This nine member committee mirrored the Settlement Committee and was comprised of: (1) five current equity holders, four of whom were current equity holders who represent litigants in the security fraud and shareholder derivative lawsuits (the "equity holders"); and (2) four past holders of equity who have claims based on the securities fraud litigation against Mercury Finance (the "security purchaser claimants"). The court will refer to this committee as either the "equity holders/security purchasers claimants committee" or the "combined committee." Under 11 U.S.C. § 510(b), all of the members of the combined committee will be treated as equity under any plan of reorganization.[1]

On July 29, 1998, Alan Aron, Arthur Kaplan, and Robert Lentz, current shareholders of Mercury Finance, presented an emergency motion seeking entry of an order directing the trustee to reconstitute membership of the equity committee. In essence, this motion challenged the composition of the combined committee. The bankruptcy court intimated that it did not have jurisdiction to grant this relief and granted leave to file an amended motion seeking what it characterized as the only available remedy—an additional committee.

On July 31, 1998, Aron, Kaplan, and Lentz, as well as George Pontikes, another Mercury Finance shareholder (all four of whom are the appellees in this case), filed an amended motion asking the bankruptcy court to remove all or some of the combined committee's members. In their motion, they contended that the security purchaser claimants cannot sit on an equity committee because they are not equity holders, since they do not currently hold any shares of stock. They also argued that the trustee abused his discretion when he appointed security purchaser claimants and equity holders who hold fewer shares than they do, in light of their stated interest in serving on the committee. Thus, the appellees asked the bankruptcy court to either: (1) order the trustee to remove the security purchaser claimants and the equity holders with fewer shares than the appellees from the combined committee and appoint persons eligible to serve under § 1102(b)(2) in their place; or (2) order the trustee to disband the combined committee and appoint a new committee in its place.

Over the opposition of the trustee, Mercury Finance, the unsecured creditors committee, and the combined committee, the bankruptcy court dissolved the combined committee.[2] *See In re Mercury Fi-*

---

**1.** 11 U.S.C. § 510(b) provides, in pertinent part, that "[f]or the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the sale or purchase of such a security ... shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock."

**2.** The United States Security and Exchange Commission also advised the bankruptcy

*nance Co.,* 224 B.R. 380 (Bankr.N.D.Ill. 1998). Specifically, the bankruptcy court held that, although the Bankruptcy Code does not grant it specific authority to review the composition of a committee or modify membership in a committee, it has inherent authority under 11 U.S.C. § 105 to review the trustee's decision to appoint the combined committee. *Id.* at 383–85. It then explained that it may modify or alter the composition of a committee when it does not adequately represent the parties-in-interest and that it is not limited to ordering appointment of an additional committee to address this situation. *Id.* Having determined that it had the authority to review the committee's composition, it then dissolved it, observing that, because there is no statutory authority for a blended committee consisting of creditors and equity holders, the trustee lacked the power to appoint such a committee under § 1102(a). *Id.* at 385–88. It subsequently denied the trustee's motion to reconsider, stating that 11 U.S.C. § 1102 does not provide for a combined committee of security purchaser claimants and equity holders. *Id.*

The bankruptcy court subsequently ordered the trustee to appoint two separate committees. The first represents the interests of current holders of Mercury Finance's common stock (the "official equity security holders committee" or the "equity committee"). The second represents the interests of the litigants in the security fraud and shareholder derivative lawsuits (the "litigants committee"). The trustee did not appeal from these orders and appointed these two new committees. The equity committee, which filed a brief pursuant to 11 U.S.C. § 1109(b), asserts that the orders appointing the new committees are final and cannot be attacked collaterally via an attack on the order dissolving the original committee. It also contends that the new committees have been making progress and that it is thus highly unlikely

that any eligible entities would be willing to serve on a blended committee even if this court were to reinstate that committee. Thus, it suggests that this appeal is moot because this court cannot, in essence, put Humpty Dumpty back together again by granting the Trustee's requested relief and reforming the combined committee.

On the other hand, the trustee contends that: (1) the bankruptcy court lacked jurisdiction under 11 U.S.C. § 105 and Fed. R.Bankr.P. 2020 to review its decision to form the combined committee and to dissolve that committee; (2) the bankruptcy court erred when it found 11 U.S.C. § 510(b) does not automatically convert security purchaser's claims into equity interests for the purposes of 11 U.S.C. § 1102 and thus erroneously concluded that the security purchaser claimants were ineligible to serve on an equity committee; and (3) the bankruptcy court erred when it found that, even if the combined committee was a blended committee (*i.e.,* that it had members who did not have equity interests), 11 U.S.C. § 1102(a)(1) allows formation of an additional committee consisting of both creditors and equity holders.

## II. Standard of Review

■ This appeal involves purely legal issues. Hence, this court will review the bankruptcy court's conclusions of law de novo. Fed.R.Bankr.Pro. 8013; *Matter of UNR Indus., Inc.,* 986 F.2d 207, 208 (7th Cir.1993).

## III. Discussion

### A. Appellate Jurisdiction

28 U.S.C. § 157(b)(1) gives bankruptcy judges the authority to hear and enter judgment in "all core proceedings arising under title 11, or arising in a case under title 11 . . . ." In turn, 28 U.S.C.

court that it was involved with the Combined Committee's formation as it had actively participated in the meetings preceding its forma-

tion, and that it supported the Combined Committee.

§ 157(b)(2)(A) provides that matters concerning the administration of the estate are core proceedings. Pursuant to 28 U.S.C. § 158(a), which vests jurisdiction over appeals from final judgments, orders, and decrees of the bankruptcy courts in the federal district courts, this court has jurisdiction over this appeal from the bankruptcy court's final order disposing of a core proceeding.

## B. Mootness

 "A case is moot if there is no possible relief which the court could order that would benefit the party seeking it." *Matter of Envirodyne Industries, Inc.*, 29 F.3d 301, 303–04 (7th Cir.1994). Thus, where a court can grant even partial relief, a case is not moot. *Id.; see also Matter of Turner*, 156 F.3d 713, 716 (7th Cir.1998) (courts are without power to decide questions that cannot affect the litigants' rights, so where debtors obtained the reaffirmation they sought, their appeal challenging the reaffirmation order was moot). Because this court could reverse the bankruptcy court and recombine the committees, this case satisfies the requirements of Article III.

The appellees' claim that recombining the committees would not be in the estate's best interests is thus besides the point. Until the committees' work is done and the case is over, it would be possible to rejoin the two committees. Therefore, to paraphrase Kipling, it is not true that the equity holders are equity holders and security purchaser claimants are security purchaser claimants, and never the twain shall meet. *See* Rudyard Kipling, Verses: 1889–1896 (The Ballad of East and West). The court accordingly declines to dismiss this appeal as moot.

## C. Does the Bankruptcy Court Have Jurisdiction to Review the United States Trustee's Appointment of the Combined Committee?

11 U.S.C. § 1102 governs the appointment of committees in chapter 11 proceedings. Prior to 1986, § 1102(c) expressly authorized the bankruptcy court to, on request of a party in interest, change the size or the membership of a creditors' or equity security holders' committee if the committee was not sufficiently representative.[3] The 1986 amendments to § 1102, however, deleted section (c) and transferred the authority to appoint Chapter 11 committees from the court to the United States Trustee. *See* 11 U.S.C. § 1102(a)(1) & (2).

Section 1102(a)(1) currently provides that, "... as soon as practicable after the order for relief under chapter 11 of this title, the United States Trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States Trustee deems appropriate." In turn, § 1102(a)(2) currently provides that, "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to ensure adequate representation of creditors or of equity security holders. The United States Trustee shall appoint any such committee."

The legislative history for the 1986 amendment indicates that Congress sought to bifurcate administrative and judicial functions by dividing these functions between the trustee and the bankruptcy court, and that it viewed the appointment of committees as an administrative task better handled by the trustee. *See* HR Report No. 99–764, 99th Cong., 2d Sess. 28 (1986), *reprinted in* 1986 U.S.C.C.A.N.

---

**3.** The old version of § 1102(c) provided that, "[o]n request of a party in interest and after notice and a hearing, the court may change the membership or the size of a committee appointed under subsection (a) of this section if the membership of such committee is not representative of the different kinds of claims or interests to be represented." 11 U.S.C. § 1102(c) (repealed 1986).

5227. The legislative history, however, does not shed any additional light on the changes to § 1102 and the removal of § 1102(c). Thus, commentators have observed that the 1986 amendment "has created considerable confusion regarding a court's authority to alter (reconstitute) a committee's composition or size. Did Congress intend to delegate all authority regarding appointment issues to the U.S. Trustee, an administrative agency, with no possibility of judicial review?" 2 J. Queenan, P. Hendel, and I. Hillinger, *Chapter 11 Theory and Practice: A Guide to Reorganization* § 10.06 at 10:17 (1994); *see also* 1 Collier on Bankruptcy, ¶ 6.14 (15th ed. rev. 1999).

The answer to this question has been far from unanimous. The majority view is that another section of the bankruptcy code enacted as part of the 1986 amendments—11 U.S.C. § 105(a)—both preserved and expanded the bankruptcy courts' equitable power to review the United States Trustee's decisions about committee membership.[4] These courts hold that the bankruptcy court has the inherent power to review acts of the United States Trustee, as well as authority under § 105(a), and use an "arbitrary and capricious" or "abuse of discretion" standard of review. *See, e.g., In re Pierce,* 237 B.R. 748 (Bankr.E.D.Cal.1999); *In re Dow Corning Corp.,* 194 B.R. 121, 137–138 (Bankr.E.D.Mich.1996), *rev'd on other grounds by* 212 B.R. 258 (E.D.Mich.1997) (addressing scope of § 1102); *In re Voluntary Purchasing Groups, Inc.,* No. 4:96 CV 396, 1997 WL 155407 (E.D.Tex. Mar. 21, 1997); *In re Barney's, Inc.,* 197 B.R. 431 (Bankr.S.D.N.Y.1996); *In re Lykes Bros. Steamship Co., Inc.,* 200 B.R. 933 (M.D.Fla.1996); *In re Value Merchants, Inc.,* 202 B.R. 280 (E.D.Wis.1996); *In re Plabell Rubber Products,* 140 B.R. 179 (Bankr.N.D.Ohio 1992); *Matter of Columbia Gas System, Inc.,* 133 B.R. 174 (Bankr. D.Del.1991); *In re First RepublicBank Corp.,* 95 B.R. 58 (Bankr.N.D.Tex.1988).

In a variant on the majority position, some courts (including the bankruptcy court here), hold that bankruptcy courts may review the United States Trustee's decisions about committee membership de novo under § 1102, and that the court's authority to review these decisions is not limited by § 105(a). These courts conclude that § 1102 allows them to modify or alter the composition of a committee when it does not adequately represent the parties-in-interest, and does not limit them to the appointment of an additional committee in such a situation. *See, e.g., In re Mercury Finance Co.,* 224 B.R. 380 (Bankr.N.D.Ill.1998) ("In the opinion of this Court, 11 U.S.C. § 102 does not restrict or limit [the courts' inherent authority to review all acts of the U.S. Trustee] in any way"); *In re SPM Mfg. Corp.,* 984 F.2d 1305 (1st Cir.1993) (cites a pre–1986 case which relied on § 1102(c)); *In re Sharon Steel Corp.,* 100 B.R. 767 (Bankr. W.D.Pa.1989); *In re Public Service Co. of New Hampshire,* 89 B.R. 1014 (Bankr. D.N.H.1988); *In re Texaco, Inc.,* 79 B.R. 560 (Bankr.S.D.N.Y.1987); *In re McLean Industries, Inc.,* 70 B.R. 852 (Bankr. S.D.N.Y.1987).

Some of these courts also base their authority to review committee appointments under § 1102 on Rule 2020 of the Federal Rules of Bankruptcy Procedure. *See, e.g., In re Barney's, Inc.,* 197 B.R. at 437–38. Rule 2020 states that "[a] proceeding to contest any act or failure to act by the United States Trustee is governed by Rule 9014." Rule 9014 articulates procedures for contested matters and, according to the bankruptcy court, contains the implicit conclusion that all acts of the U.S. Trustee are subject to review by the

---

**4.** 11 U.S.C. § 105(a) provides that: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

Court. *In re Mercury Finance Co.*, 224 B.R. at 384.

In contrast, the minority position is that deletion of § 1102(c) and the change to the current version of § 1102(a)(1) and (2) effectively abolished the bankruptcy court's authority to review the United States Trustee's decisions regarding committee membership. The courts following the minority position hold that the equitable powers in § 105(a) cannot be used to circumvent specific provisions elsewhere in the Bankruptcy Code. *See, e.g., In re Dow Corning Corp.*, 212 B.R. 258 (E.D.Mich. 1997); *In re New Life Fellowship, Inc.*, 202 B.R. 994 (Bankr.W.D.Okla.1996); *In re Victory Markets, Inc.*, 196 B.R. 1 (Bankr.N.D.N.Y.1995); *In re Wheeler Technology, Inc.*, 139 B.R. 235 (9th Cir. BAP 1992); *In re Hills Stores Co.*, 137 B.R. 4 (Bankr.S.D.N.Y.1992); *In re Drexel Burnham Lambert Group, Inc.*, 118 B.R. 209 (Bankr.S.D.N.Y.1990); *Matter of Gates Engineering Co., Inc.*, 104 B.R. 653 (Bankr.D.Del.1989).

■ The Seventh Circuit has not addressed the effect of the elimination of subsection (c) from § 1102. For the following reasons, the court finds that § 105(a) permits it to review the United States Trustee's decisions regarding committee membership for abuse of discretion. It thus declines to consider whether § 1102 itself, as amended, insulates the Trustee's decisions from judicial scrutiny, or whether Rule 2020 of the Federal Rules of Bankruptcy Procedure provides an additional independent basis supporting review of the Trustee's decisions regarding committee membership.

■ Section 105(a) gives the bankruptcy courts the power to issue orders it deems appropriate to carry out the provisions in Title 11. *In re K.P. Enterprise*, 135 B.R. 174, 186 (Bankr.D.Me.1992) ("[a]lthough § 105 should not be viewed as a panacea for all ills confronted in a bankruptcy case, it is clearly meant to enable the court to see that other provisions of the Code are implemented"). Of course, this authority is not limitless, as under § 105(a), "a court may exercise its equitable power only as a means to fulfill some specific Code provision." *Matter of Fesco Plastics Corp., Inc.*, 996 F.2d 152, 154 (7th Cir.1993). Thus, "when a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code." *Id.;* *see also In re Carlson*, 126 F.3d 915, 920 (7th Cir.1997) ("although a bankruptcy court is a court of equity, it may not use its equitable power to circumvent the law").

■ Contrary to the minority position, the court finds that reading § 105(a) to allow review of committee appointment decisions by the Trustee under § 1102 for abuse of discretion is not at odds with the authority given to the Trustee by Congress when it revised § 1102 in 1986. This is because Congress' grant of power to the Trustee in § 1102 to appoint committees contains an implicit limitation: the Trustee has the discretion to appoint only eligible individuals. Any other reading of § 1102 would give the Trustee absolute immunity with respect to committee appointments. Moreover, the bankruptcy court's ability to order the Trustee to appoint additional committees under § 1102(a)(2) does not remedy this situation, as this allows the court to address inadequate representation, not improper representation.

■ The court finds that the Trustee has failed to establish that Congress meant to completely insulate the Trustee's decisions in this way. Specifically, there is a strong presumption in favor of judicial review of administrative action. *In re Voluntary Purchasing Groups, Inc.*, 1997 WL 155407 *2, *citing Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). The Supreme Court teaches that this presumption can only be overcome by a showing of clear and convincing evidence of a contrary intent. *Bowen*, 476 U.S. at 671, 106 S.Ct. 2133.

Here, the legislative history for the 1986 amendments to § 1102 indicates only that Congress viewed the appointment of committees as an administrative task better handled by the United States Trustee. *See* HR Report No. 99–764, 99th Cong., 2d Sess. 28 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5227. It does not show that Congress intended to cut back on the bankruptcy court's ability to resolve disputes. *See In re Sharon Steel Corp.*, 100 B.R. at 773. The court concludes, therefore, that the elimination of § 1102(c) and the description of the trustee's committee-appointing responsibilities as "administrative" does not constitute clear and convincing evidence showing that Congress intended to insulate all of the trustee's decisions from judicial review. *See generally Plabell Rubber Products*, 140 B.R. at 180.

Thus, the court parts company with the decisions holding that § 105(a) impermissibly ignores the changes made in 1986 to § 1102. In short, the record simply fails to establish that Congress intended the trustee to have "unbridled discretion" over the appointment of creditor committees. *In re Lykes Bros. Steamship Co., Inc.*, 200 B.R. at 939–40. It also fails to demonstrate that Congress meant to leave parties who contest the eligibility of persons appointed by the trustee with no means of redress regardless of the merits of their claims. *Id.*

In addition, with respect to the alleged conflict between § 105(a) and § 1102, there is a fundamental difference between using § 105(a) as a means to review the trustee's appointment decisions de novo and using it to ensure that the trustee is properly exercising his discretion. Picking and choosing from among eligible creditors is not the same as deciding whether a committee member is eligible to serve in the first instance. Thus, the court empha-

sizes that it is not using § 105(a) to conduct a wholesale reconsideration of the trustee's decision.[5]

█ Instead, § 105(a) allows the bankruptcy court to review the trustee's decision for an abuse of discretion (as opposed to conducting a de novo review), on the theory that the court cannot carry out the provisions in the Bankruptcy Code if the trustee abuses the discretion given to him by the Code. *See, e.g., In re Value Merchants, Inc.*, 202 B.R. at 287–88. The authority to review the trustee's appointments under the abuse of discretion standard means that, if this court finds that the Trustee acted arbitrarily and capriciously in forming the combined committee, it can issue "any order necessary or appropriate to rectify the situation ..." *Id.* at 288. With these principles in mind, the court finally turns to the merits of this appeal—did the bankruptcy court correctly review the trustee's appointment of the combined committee?

### D. Validity of the Committee of Equity Holders and Security Purchaser Claimants Under 11 U.S.C. § 1102

The Trustee claims that, if the bankruptcy court had the authority to dissolve the combined committee, it erred when it did so because: (1) the security purchaser claimants hold an equity interest in the estate and thus were eligible to serve on an equity holders committee; and (2) § 1102(a)(1) allows him to appoint a committee comprised of both unsecured creditors and equity security holders. The court disagrees.

### 1. Does 11 U.S.C. § 510(b) Convert Securities Claimants into Current Equity Holders for the Purposes of 11 U.S.C. § 1102?

█ As noted above, § 1102(a)(1) directs the trustee to appoint a committee of

**5.** The bankruptcy court relied upon § 1102 and Rule 2020, as well as § 105, and reviewed the Trustee's decision to appoint a combined committee de novo. This court notes that, although its decision is based on § 105, it may nevertheless may affirm the bankruptcy court's decision on a different basis if that basis is supported by the record and law. *See, e.g., In the Matter of Volpert*, 110 F.3d 494, 500 (7th Cir.1997).

unsecured creditors and gives him the discretion to appoint additional committees of creditors or equity security holders as necessary. According to the trustee, the security purchaser claimants have equity-related interests under 11 U.S.C. § 510(b) and thus could properly sit on an equity committee.[6] Specifically, the Trustee reasons that the security purchaser claimants hold claims that arise from the purchase or sale of Mercury Finance's security. He also points to the bankruptcy court's holding that the security purchaser claimants will receive treatment as equity under a plan. Finally, he disagrees with the bankruptcy court's statement that the economic treatment afforded to these claimants under § 510(b) at the time of distribution does not transform them into current equity holders, contending that all equity holders, past or present, share a common interest. Unfortunately for the trustee, however, these arguments conflict with the plain meaning of § 1102.

Section 1102(a) authorizes committees consisting of "creditors holding unsecured claims" or "equity security holders."[7] Section 1102(b) provides further guidance by defining the persons who ordinarily sit on a committee appointed under § 1102(a) as individuals who "hold" certain types of claims. 11 U.S.C. § 1102(b). Importantly, throughout § 1102, Congress refers to creditors who "hold" or "creditors holding" certain claims. 11 U.S.C. § 1102(a, b). At the risk of stating the obvious, "hold" is a present tense verb, and the phrase "holding unsecured claims" is a participial phrase with the present participle "holding."

This court agrees with the bankruptcy court that the plain meaning of these present tense verbs requires an equity claimant to currently hold or be currently holding a present equity security to be within the statute's reach. In other words, regardless of the alleged similarities between the interests of past and present equity holders, the statute expressly refers to present equity holders, and does not include claims arising from prior equity holdings or equity-related interests. For the purposes of § 1102, therefore, the security purchaser claimants are creditors and not present equity holders, and thus are ineligible to serve on an equity holders committee.[8]

▮ Having determined that the appointment of the combined committee was improper, the court now considers whether the bankruptcy court selected an appropriate remedy. In connection with its finding that the security purchaser claimants could not sit on an equity committee, the bankruptcy court dissolved the combined committee. It explained that simply removing the security purchaser claimants would convert the combined committee to an equity committee, but would not resolve the issues regarding the committee's formation as § 1102(a) does not authorize the formation of a blended committee consisting of

6. Section 510(b) provides that:
 [f]or the purpose of distribution under this title, a claim from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

7. The court addresses the parties' arguments regarding the word "or" in § 1102(a) below.

8. In any event, it also appears that the issue of whether the bankruptcy court would subordinate and allow the securities claimants' claims was not conclusively determined at the time the trustee formed the combined committee. Thus, even if § 1102 somehow converted the security purchaser claimants into equity holders (a point with which the court disagrees), the status of the security purchaser claimants was still open when the trustee formed the combined committee. Thus, it is unclear whether these claimants would have been eligible to serve on a combined committee even if the court were to have agreed with the trustee's statutory interpretation.

creditors and equity holders. The trustee wanted to keep the security purchaser claimant on the combined committee and does not appear to have attempted to substitute new equity holders members onto the now decimated combined committee. Thus, the court finds that the bankruptcy court's order to start from scratch and appoint two separate committees was an appropriate remedy.

### 2. Does 11 U.S.C. § 1102(a)(1) Allow the United States Trustee to Appoint an Additional Committee Consisting of Creditors and Equity Holders?

 The Trustee also contends that § 1102(a) authorizes him to appoint an additional committee consisting of both creditors and equity security holders. This argument turns on the meaning of the word "or" in the phrase "the trustee . . . may appoint additional committees of creditors or of equity security holders as [he] deems appropriate." Pointing to 11 U.S.C. § 102(5), which provides that, in Chapter 11, the word " 'or' is not exclusive," the Trustee posits that reading "or" as inclusive means that he can appoint a combined committee.

The bankruptcy court disagreed, stating that an inclusive reading of "or" requires it to substitute "and" or "and/or" in place of "or" in § 1102(a). It read the word "or" as modifying and relating to the complete phrase "an additional committee of creditors [and/or] an additional committee of equity holders," rather than the words "creditors" or "equity holders." It then concluded that, when the word "or" is read as if it said "and/or," it authorizes the Trustee to appoint additional committees of creditors *and/or* additional committees of equity holders.

The Trustee vigorously argues that this reading of § 1102(a) ignores authority indicating that "or" should not be interpreted as indicating a choice between mutually exclusive alternatives. In support, it cites to *In re Federated Group, Inc.,* 107 F.3d

730, 732 (9th Cir.1997); *In re SSS Enterprises, Inc.,* 145 B.R. 915, 918 (Bankr. N.D.Ill.1992); *In re Fox Island Square Partnership,* 106 B.R. 962, 966 (Bankr. N.D.Ill.1989); and *Matter of Cavalier Homes of Georgia, Inc.,* 102 B.R. 878, 889 n. 29 (Bankr.M.D.Ga.1989), for the proposition that the word "or" in § 1102(a) authorizes a combined committee. These cases, which construe bankruptcy statutes other than § 1102, indeed support the undisputed proposition that "or" in bankruptcy really means "and/or."

While this court agrees with the Trustee regarding the expansive scope of the word "or" in the bankruptcy context, it disagrees as to the effect of reading § 1102(a) with the words "and/or" substituted for "or." The phase "additional committees" in § 1102(a) ("the trustee . . . may appoint additional committees of creditors [and/]or of equity security holders as [he] deems appropriate") modifies "creditors" and "equity security holders." Thus, it allows the Trustee to appoint any combination of: (1) one or more creditors committees and/or (2) one or more equity committees. It does not, however, allow him to appoint a single combined creditor and equity committee.

### IV. Conclusion

For the above reasons, the court finds that this action is not moot and that it may review the Trustee's appointments under 11 U.S.C. § 1102 for an abuse of discretion pursuant to 11 U.S.C. § 105. Because a combined committee consisting of security purchaser claimants and equity holders is outside the ambit of § 1102, the bankruptcy court did not abuse its discretion when it dissolved that committee and ordered the appointment of separate committees. Accordingly, the decision of the bankruptcy court is affirmed.